IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER DORMAN,
individually and on behalf of
all others similarly situated,

                                                              OPINION AND ORDER

                Plaintiff,

                                                              09-cv-99-bbc

   v.

DHL EXPRESS (USA), INC. and
CONSOLIDATED TERMINALS, INC.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a civil action for monetary relief in which plaintiff Christopher Dorman, on behalf of himself and others similarly situated, contends that defendants DHL Express (USA), Inc. and Consolidated Terminals, Inc. violated the Fair Labor Standards Act, 29 U.S.C. § 207, and Wisconsin labor laws, Wis. Stat. §§ 103.03 and 109.03 and Wis. Adm. Code DWD § 274.03, by not paying their drivers overtime compensation for work performed in excess of 40 hours per week. On July 16, 2009, the parties filed a stipulation to conditionally certify plaintiff's FLSA claim as a collective action under 29 U.S.C. § 216(b). Dkt. #55. Jurisdiction is present. 28 U.S.C. §§ 1331 and 1367.

1

The case is before the court on plaintiff's motion to certify his Wisconsin labor law claim as a class action under Fed. R. Civ. P. 23. Dkt. #81. Although defendants stipulated to the conditional certification of plaintiff's FLSA claims as a collective action, they oppose plaintiff's request to certify the state law claim as a class action. I conclude that because pursuit of the state law claim will require individualized determinations of the activities of each of the proposed class members, the proposed class does not satisfy Rule 23(b)'s predominance and superiority requirements and would not save the parties or the court time and effort. Therefore, I will deny plaintiff's motion.

The following facts are drawn from the evidence submitted by plaintiff and are pertinent to the pending motion.

## FACTS

### A. Parties

DHL Express (USA), Inc., is a Delaware corporation with its principal place of business in Plantation, Florida. DHL provides package delivery throughout the United States. Defendant Consolidated Terminals, Inc., is a Wisconsin company with its principal place of business in Milwaukee, Wisconsin. Until DHL terminated its contract in February 2009, it operated as a contractor for DHL by employing drivers who deliver DHL packages. Plaintiff was employed as a driver for Consolidated and delivered DHL packages between

2

September 2007 and January 2008. Plaintiff seeks to certify a class defined as

> All persons who are or have been employed as DHL drivers for Consolidated in Wisconsin at any time during the past two years and who were denied payment of overtime wages.

### B. Delivery Drivers

Between February 23, 2007 and February 2009, defendant Consolidated paid all of its Wisconsin drivers straight time for all hours worked. The drivers were not paid overtime wages for hours worked in excess of forty hours a week. Consolidated's owner, Perri Giorgi, decided that he would not pay any drivers overtime wages because he believed that the Motor Carrier Exemption to the Fair Labor Standards Act and Wisconsin labor law applied to any driver working for a company that maintained commercial motor vehicles in its fleet. Between February 2007 and February 2009, Consolidated's fleet of vehicles included 106 non-commercial and nine commercial motor vehicles.

While plaintiff was employed by Consolidated, he was paid an hourly wage and was never paid an overtime wage although he regularly worked more than forty hours a week. As a driver, plaintiff's job duties consisted primarily of picking up and delivering DHL packages. Each day, plaintiff would load packages into his delivery vehicle, a Dodge Sprinter that weighs less than 10,000 pounds, and proceed to complete his assigned pick-up and drop-off routes. All other Consolidated drivers performed similar job duties. Plaintiff was

never required to place a hazardous materials placard on his delivery vehicle and he never saw any other Consolidated drivers place such a placard on their delivery vehicles.

Between February 2007 and February 2009, all Consolidated drivers delivered only DHL packages. All drivers were required to wear DHL uniforms, carry DHL identification badges and drive vehicles marked with the DHL logo. No drivers were paid an overtime wage for hours worked in excess of forty hours a week.

## OPINION

### A. Rule 23

In addressing plaintiff's request for class certification, I must conduct a "rigorous analysis" of plaintiff's request to determine whether he has satisfied the requirements of Fed. R. Civ. P 23 in an effort to "protect[] absent class members whose rights may be affected by the class certification." Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003). Under Rule 23, district courts maintain broad discretion in determining whether certification of a class action lawsuit is appropriate. Keele v. Wexler, 149 F.3d 589, 592 (7th Cir. 1998). "[P]lantiff has the burden of proving that a case is appropriately a class action and meets all the requirements of Rule 23." Valentino v. Howlett, 528 F.2d 975, 978 (7th Cir. 1976) (citation omitted); see also Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006).

Before addressing the express requirements under Rule 23, courts look at two implicit

4

ones. Kasten v. Saint-Gobain Performance Plastics Corp., 556 F. Supp. 2d 941, 957-58 (W.D. Wis. 2008). First, the proposed class definition must be definite, that is, ascertainable, precise and objective. Id. at 958; see also Alliance To End Repression v. Rochford, 565 F.2d 975, 977-78 (7th Cir. 1977). Second, named plaintiffs "'must be members of the class they propose to represent.'" Kasten, at 958 (quoting Bilhovde v. St. Croix, 219 F.R.D. 607, 614 (W.D. Wis. 2003)). The express requirements of Rule 23 begin with the four listed under Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The party requesting certification must satisfy all four of the requirements of subsection(a) of Rule 23, together with one requirement of subsection (b). Plaintiff seeks certification under subsection (3) of Rule 23(b). Failure to meet these requirements dooms any motion for class certification. Arreola v. Godinez, 546 F.3d 788, 794 (7th Cir. 2008). Because plaintiff cannot satisfy the Rule 23(b)(3) requirement under which he seeks class certification and the purpose of Rule 23 is to achieve economies of time and effort, I will start the analysis with that subsection.

B. Rule 23(b)(3)

5

Fed. R. Civ. P. 23(b)(3) requires the party seeking certification to show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The language in Rule 23(b)(3) is divided into two requirements referred to as the predominance and superiority requirements. Rule 23(b)(3) also provides a non-exhaustive list of four factors to be considered when addressing the predominance and superiority requirements. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623-24 (1997). A court should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The predominance and superiority requirements are meant "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Windsor, 521 U.S. at 615 (alteration in original) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note (1966)).

6

1. Predominance

Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Although similar to the commonality requirement under Rule 23(a)(2), the predominance requirement is more demanding. Windsor, 521 U.S. at 623-24. Furthermore, the predominance requirement is meant to test "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Id. at 623.

Plaintiff contends that he is challenging a policy or practice of not paying overtime wages to any drivers and that challenging a blanket practice provides a common question of law that predominates over any individual questions. Typically, when an employee challenges its employer's policy, "the validity of that policy predominates over individual issues and class certification is appropriate." Blihovde, 219 F.R.D. at 620 (citations omitted). Plaintiff contends that this is true in this case, but defendants argue persuasively that their Motor Carrier exemption defense will require an analysis of each individual driver and that analysis will predominate. (I note that defendant DHL Express filed its own brief opposing plaintiff's motion for class certification in which it challenges satisfaction of the predominance requirement because of the individualized inquiry necessary to determine whether it is liable as a joint employer for each driver. I need not delve into the applicability of joint employer liability because application of the Motor Carrier exemption defense alone

7

tips the balance against certifying plaintiff's proposed class.) Ordinarily, a court should not decide the merits of a case before deciding whether to certify a class, but when considerations of class requirements under Rule 23 overlaps the merits, "then the judge must make a preliminary inquiry into the merits." Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 676 (7th Cir. 2001). Such an inquiry is necessary here.

Under the FLSA, the Motor Carrier exemption reads as follows:

The provisions of section 207 of this title shall not apply with respect to--

> (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49[.]

29 U.S.C. § 213(b)(1). Although worded differently, Wisconsin's Motor Carrier exemption must be applied in the same manner as the FLSA because the Wisconsin law provides:

> [E]ach employer subject to ch. DWD 274 shall be exempt from the overtime pay requirements in s. DWD 274.03 and these exemptions shall be interpreted in such a manner as to be consistent with the federal Fair Labor Standards Act and the Code of Federal Regulations as amended, relating to the application of that act to all issues of overtime in respect to the following employees:
>
> > (4) Drivers, driver's helpers, loaders or mechanics of a motor carrier or a private or contract carrier who are covered under the provisions of section 204 of the Motor Carrier Act 1935 as amended.

Wis. Admin. Code § DWD 274.04(4). The specific section of the Motor Carrier Act cited in both exemptions, § 204 of the Motor Carrier Act, 49 U.S.C. § 31502,

8

>   authorizes the Secretary to establish qualifications and maximum hours of service for employees of a motor carrier if "property . . . [is] transported by [the] motor carrier between a place in a State and place in another State," 49 U.S.C. §§ 31501(1)(A), 31502(b), provided that the employees "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a); Levinson v. Spector Motor Service, 330 U.S. 649, 670-72 (1947); Walters v. American Coach Lines of Miami, Inc., 575 F.3d 1221, 1227-28 (11th Cir. 2009) (per curiam).

Collins v. Heritage Wine Cellars, Ltd., 589 F.3d 895, 897 (7th Cir. 2009) (alterations in original). A driver driving a vehicle carrying property traveling in interstate commerce is an example of an employee covered under the Act. Id. at 898.

The Court of Appeals for the Seventh Circuit has explained that the applicability of the Motor Carrier exemption "depends upon the activities of individual employees." Goldberg v. Faber Industries, Inc., 291 F.2d 232, 235 (7th Cir. 1961). This requirement has not changed. E.g., McGee v. Corporate Express Delivery Systems, No. 01-C-1245, 2003 WL 22757757, at *3 (N.D. Ill. Nov. 20, 2003); Collins v. Heritage Wine Cellars, Ltd., No.07-CV-1246, 2008 WL 5423550, at *10 (N.D. Ill. Dec. 29, 2008), aff'd, 589 F.3d 895 (7th Cir. 2009) ("The activities of one Plaintiff cannot justify a blanket exemption for other Plaintiffs."). Further, the Federal Department of Labor's regulations explain that it is possible that the exemption may apply to an employee during one workweek and not apply the next. 29 C.F.R. §§ 782.2(b)(3) & (4).

In their briefs, the parties have made it clear that a key issue is whether the Motor Carrier Act exemption to the FLSA, 29 U.S.C. § 213(b)(1), and its state law equivalent, Wis. Admin. Code § DWD 274.04(4), apply in this case. Application of the exemption is a specific individual issue that will predominate over any other common issue of fact or law. Although plaintiff is challenging a blanket policy or practice of not paying any driver overtime wages, whether that practice is valid is not a common issue, but one whose resolution will depend on the circumstances surrounding each driver.

Moreover, whether the Motor Carrier exemption applies to plaintiff and other drivers will depend on when they were employed. Between August 10, 2005 and June 6, 2008, the Motor Carrier exemption applied to a "motor carrier," defined in the statute to cover "a person providing commercial motor vehicle (as defined in section 31132) transportation for compensation." 49 U.S.C. § 13102(14) (2007). However, on June 6, 2008, the "motor carrier" definition was amended to cover "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14) (2009). Thus, as of June 6, 2008, there was no longer a need to decide whether a *commercial* motor vehicle was used in assessing whether the exemption applied. Accordingly, determining whether defendants were "motor carriers" as defined under the Act will depend on each proposed class member's time of employment. This will require an individualized inquiry into facts surrounding each proposed class member. Therefore, plaintiff has failed to satisfy the predominance requirement under Rule

10

23(b).

2. <u>Superiority</u>

In addition to failing to satisfy the predominance requirement, plaintiff fails to meet the superiority requirement. The superior method in which to address the Wisconsin labor law overtime wage claim applicable to other Consolidated drivers is to have the plaintiffs who opt in to the FLSA portion of this case assert the state law claim as well. This will allow each plaintiff to make an individualized decision of his or her claim: whether it arose within the shorter state law two-year statute of limitations and whether it falls under the pre- or post-2008 amendment to the Motor Carrier exemption. Their doing so will help conserve litigation time and effort.

Further, the potential members of plaintiff's proposed Rule 23 class will have already received notice to participate in the FLSA collective action, which asserts a federal overtime wage claim identical to plaintiff's state labor law overtime wage claim. In fact, the number of potential state law class members is based on the number of possible members in the FLSA collective action. Thus, if the value to a potential class member of pursuing an overtime wage claim would not be enough to warrant filing a separate claim, he or she need only opt in to the collective action, something that more than 80 potential class members have already done. If potential class members choose not to opt in, they remain free to bring

their own claims, both FLSA and state labor law, at a separate time. Certifying a Rule 23 class would require expending additional time and effort to send a second notice to the same people who have already received notice of the FLSA collective action.

Finally, no economy of time or effort would be served by creating a Rule 23 class in addition to the FLSA collective action. To defeat the FLSA claims of the opt-in plaintiffs, defendants must prove that the Motor Carrier exemption applies to each one. Because the exemption is the same under the FLSA and Wisconsin labor laws, each opt-in plaintiff's claim to overtime will rise or fall on his or her specific work circumstances. Adding the Rule 23 class would require additional litigation time, work and cost to find information about class members who did not care enough to opt in to the FLSA collective action.

It may prove true that many of the opt-in plaintiffs will stipulate to the pertinent facts regarding application of the Motor Carrier exemption. However, those plaintiffs would be making the affirmative decision to have their circumstances lumped together with other plaintiffs because they chose to opt in to the FLSA collective action. 29 U.S.C. § 216(b) (to "opt-in," similarly situated employee must sign written consent form and form must be filed with court). The Motor Carrier exemption puts too many variables into play to use a Rule 23 class to address claims for which the exemption is a key issue. The fairest and most efficient way to adjudicate the alleged Wisconsin labor law overtime pay violations would not be to use a Rule 23 class. Therefore, plaintiff's motion will be denied.

12

ORDER

IT IS ORDERED that plaintiff Christopher Dorman's motion for Rule 23 class certification of his Wisconsin labor law claim for overtime wages, dkt. #81, is DENIED.

Entered this 2nd day of February, 2010.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge